UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON,

Plaintiff,

v.

CONVERGYS CORPORATION, and
CONVERGYS CUSTOMER MANAGEMENT
GROUP, INC.,

Defendants.

12 Civ. 08968 (CRK)[1]
MEMORANDUM AND ORDER

## INTRODUCTION

CLAIRE R. KELLY, District Judge:

This insurance dispute arises out of the interpretation of Technology, Media & Professional Liability Insurance policy QK1102774 (the "Policy"), an insurance policy Certain Underwriters at Lloyd's, London, Syndicates 623 and 2623 ("Beazley") issued to Convergys Corporation and Convergys Customer Management Group, Inc., (collectively "Convergys") for the period August 1, 2011 to August 1, 2012.

In early 2012, Mr. Nicholas Martin initiated a lawsuit in the Northern District of Illinois (the "*Martin* Action") later certified as a class action. The complaint alleged that Dun & Bradstreet, Inc. ("D&B") and Convergys Customer Management Group, Inc., violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") by making "improper and unsolicited autodialed calls to plaintiff's cellular telephone." See Howell Aff. Convergys' Mot. Part. Summ. J. Ex. 1, ¶ 1, July 11, 2013, ECF No. 25-1. Thereafter, Convergys notified its insurance carrier Beazley and tendered a claim for coverage under the Policy. Beazley initially denied coverage claiming that the *Martin* Action was specifically excluded under the Policy. After Convergys prompted Beazley to reconsider, Beazley acknowledged that the suit was potentially covered under the Policy and

---

[1] Judge Claire R. Kelly of the United States Court of International Trade, sitting by designation.

reserved its right ultimately to dispute and deny coverage.[2]  Convergys subsequently engaged in settlement negotiations with the *Martin* Action plaintiffs.[3]

On November 20, 2012, after several communications between the parties concerning whether Beazley would participate in the settlement negotiations, Beazley filed this action against Convergys in the Supreme Court of New York. Convergys removed the case to the United States District Court for the Southern District of New York. See Notice of Removal, Dec. 10, 2012, ECF No. 1.  On March 18, 2013, Convergys answered and asserted several affirmative defenses and counterclaims.  See Convergys' Answer and Countercls. 6-8, 20-23 Mar.18, 2013, ECF No. 16.

In its Complaint, Beazley seeks a declaratory judgment that "the Policy does not cover the cost of defending, settling or paying a judgment in Mr. Martin's lawsuit." Beazley's Compl. ¶ 2, Dec. 10, 2012, ECF No. 1-1.  In its Answer and Counterclaims, Convergys seeks declarations that Beazley is obligated to pay "all costs of defense of the *Martin* Action," "the costs of the settlement of the *Martin* Action," and "all fees and costs of defense of this action."  Convergys' Answer and Countercls. at 20-23.  Further, Convergys seeks damages for breaches of these obligations.  Id.

## PARTIES' MOTIONS

On July 11, 2013 and July 29, 2013, Convergys and Beazley respectively moved for partial summary judgment and summary judgment.  See Convergys' Not. Mot. Part. Summ. J., July 11, 2013, ECF No. 20; see also Beazley's Not. Mot. Summ. J., July 29, 2013, ECF No. 28.  In its motion, Beazley argues that as a matter of law it owes no coverage for the *Martin* Settlement because Exclusion K of the Policy bars coverage; the Policy precludes payment for penalties; and Convergys failed to obtain Beazley's prior written consent to settlement as required by the Policy.  See Beazley's Mot. Summ. J. and Opp'n, Jul. 29, 2013, ECF No. 29. Convergys claims Exclusion K does not apply to its claim and, therefore, cannot bar coverage, and the amounts sought by Convergys

---

[2] The Policy provides coverage for both "**Damages**" and "**Claims Expenses**" as those terms are defined in the Policy, but provides that Beazley has no duty to defend claims. See Policy at ¶¶ I.C.2., II.A. The Policy also has a $1 million deductible that is applicable to this claim and which can be exhausted by "**Claims Expenses**."  The parties have informed the court the "**Claims Expenses**" did not exhaust the $1 million deductible. Thus, it is only "**Damages**," and therefore the subsequent *Martin* Settlement, that could exhaust the deductible and for which Convergys could seek reimbursement.

[3] The parties to the *Martin* Action entered a settlement agreement which Convergys attached to their Reply. See Ziffer Aff. Convergys' Opp'n and Reply Ex. 6, Sept. 9, 2013, ECF No. 36-6.  The District Judge approved the settlement agreement on January 16, 2014.  See Letter to the Court Attach. 2, Mar. 5, 2014, ECF No. 44.

"constitute covered 'Damages' under the Policy."[4]  See Convergys' Mot. Part. Summ. J. 1, Jul. 11, 2013, ECF No. 21.

Because the court finds that coverage is specifically excluded by Exclusion K of the Policy, the court grants summary judgment in favor of Beazley and denies Convergys' Motion for Partial Summary Judgment.

## JURISDICTION & CHOICE OF LAW

The court takes jurisdiction pursuant to 28 U.S.C. § 1332 and will apply New York law pursuant to the parties' choice of law in the Policy. See Beimesche Aff. Convergys' Mot. Part. Summ. J. Ex. 1 at Convergys00003086, July 11, 2013, ECF No. 24-1.[5]

## STANDARD OF REVIEW

Summary judgment is appropriate where a moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmoving party has the burden of proof at trial, the moving party may be awarded summary judgment by showing a lack of evidence to support an essential element of the nonmovant's claim. See Id., at 324-25.

## DISCUSSION

When interpreting an insurance policy, like a contract, the court will give unambiguous provisions "their plain and ordinary meaning." Lavanant v. General Acc. Ins. Co. of America, 79 N.Y.2d 623, 629, 595 N.E.2d 819, 584 N.Y.S.2d 744 (1992); see also White v. Continental Cas. Co., 9 N.Y.3d 264, 267, 878 N.E.2d 1019, 848 N.Y.S.2d 203 (2007) ("As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." (citations omitted)). "'[I]f the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity.'" White, 9 N.Y.3d at 267 (citing Greenfield v. Philles Records, 98 N.Y.2d 562, 570, 780 N.E.2d 166, 750 N.Y.S.2d 565 (2002)). Absent ambiguity, "the Court will not look to extrinsic evidence, but will interpret

---

[4] Convergys also moved for summary judgment on Beazley's third, fifth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth affirmative defenses. However, Beazley withdrew its third, fifth, ninth, eleventh and thirteenth affirmative defenses (see Friedman Aff. Beazley's Mot. Summ. J. and Opp'n Ex. 30, July 29, 2013, ECF No. 30-2) and the remaining defenses are Beazley's arguments for granting summary judgment: Exclusion K bars coverage, the settlement was made without consent, and TCPA statutory damages are excluded penalties.

[5] Hereinafter the Policy will be cited as "Policy" at the relevant section (i.e. Policy at V.K.).

the contract on its face, giving the words their ordinary meaning." Retail Brand Alliance, Inc. v. Factory Mut. Ins. Co., 489 F. Supp. 2d 326, 330 (citing Kinek v. Paramount Communications, Inc., 22 F.3d 503, 509 (2d Cir. 1994). Moreover, insurance policies "should be read in light of common speech and the reasonable expectations of a businessperson." Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co., 472 F.3d 33, 42 (quoting Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co., 13 A.D.3d 599, 788 N.Y.S.2d 142, 144 (N.Y.App.Div. 2004); see also YAM Check Cashing Corp. v. Federal Ins. Co., 699 F.3d 727, 729 (2d Cir. 2012) ("Under New York insurance law, the plain language of an insurance policy, read 'in light of common speech and the reasonable expectations of a businessperson' will govern if the language is unambiguous." (citations omitted)).

Under New York law, it is well established that "a policyholder bears the burden of showing that the insurance contract covers the loss." Morgan Stanley Group Inc. v. New England Ins. Co., 225 F.3d 270, 276 (2d Cir. 2000) (citations omitted); see also Consolidated Edison Co. of New York, Inc. v. Allstate Ins. Co., 98 N.Y.2d 208, 220, 746 N.Y.S.2d 622, 627, 774 N.E.2d 687, 692 (2002) (discussing insured's initial burden). However, where "an insurer 'claims that an exclusion in the policy applies to an otherwise covered loss,' the 'insurer bears the burden of proof' to demonstrate that the exclusion applies." RSUI Indem. Co. v. RCG Group (USA), 890 F. Supp. 2d 315, 325 (S.D.N.Y. 2012), aff'd, 539 F.App'x 3 (2013) (citing Morgan Stanley Group, 225 F.3d at 276 n.1); see also Consolidated Edison Co., 98 N.Y.2d at 220 ("Once, coverage is established, the insurer bears the burden of proving that an exclusion applies."). Exclusionary clauses are enforced "only where [the court has] found them to 'have a definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion.'" Pioneer Tower Owners Assn. v. State Farm Fire & Cas. Co., 12 N.Y.3d 302, 307, 908 N.E.2d 875, 880 N.Y.S.2d 885 (2009) (citing Breed v. Insurance Co. of N. Am., 46 N.Y.2d 351, 355, 385 N.E.2d 1280, 413 N.Y.S.2d 352 (2009)). Finally, where an insurer establishes that an exclusion applies, the insured bears the burden of establishing that an exception to the exclusion applies. See Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co., 702 F.3d 118, 121-122 (2d Cir. 2012) (noting a shift in New York law since 1994 that the Insured now bears the burden to prove an exception to an exclusion applies); see also RSUI Indem. Co., 890 F. Supp. 2d at 325.

Beazley claims the Policy does not insure Convergys for the Martin Action because the Martin Action falls under Exclusion K and that no exception applies. Thus, the issues on these cross-motions are: (1) whether the Martin Action falls under Exclusion K; and (2) if so, does the exception to Exclusion K "for consumer privacy protection laws under Insuring Clause I.C." apply. Policy at V.K. Alternatively, Beazley argues that the statutory damages provided for in 47 U.S.C. § 227(3) are "penalties" not covered by the Policy, and/or Convergys failed to follow proper procedures to obtain Beazley's consent for the settlement, thus barring Convergys from recovering. Because the court finds that as a matter of law, Exclusion K unambiguously bars coverage for the Martin Action, it does not address Beazley's alternative arguments.

The Policy provides for "Exclusions" listed at Section V.[6]  There are 23 subsections listing various exclusions, but the only one at issue here is Exclusion K which provides:

> The coverage under this Insurance does not apply to **Damages**,[7] **Penalties** or **Claims Expenses** in connection with or resulting from any **Claim**, or to any **Privacy Notification Costs**:
>
> . . .
>
> K.   For, arising out of or resulting from any actual or alleged antitrust violation, restraint of trade, unfair competition (except as provided in Insuring Clause I.D.11.), violation of the Sherman Anti-Trust Act, the Clayton Act, the Robinson-Patman Act, as amended, false, deceptive or

---

[6] The Policy provides for the scope of coverage in its section "I. Insuring Clauses." Convergys only asserts coverage under Insuring Clause I.C.2.(c)(iii), thus, the only relevant Insuring Clause provides that as part of the Insurer's Privacy Liability, it is:

> To pay on behalf of the **Insured**:
>
> **Damages** and **Claims Expenses**, in excess of the Deductible, which the **Insured** shall become legally obligated to pay because of any **Claim**, including a **Claim** for violation of a privacy law, first made against any **Insured** and reported to the Underwriters pursuant to the terms of the Policy for:
>
> (c)      failure by the **Insured** to comply with that part of a **Privacy Policy** that specifically:
>
> . . .
>
> (iii)      provides a person with the ability to assent to or withhold assent for (e.g. opt-in or opt-out) the **Insured Organization's** collection or use his or her **Personally Identifiable Non-Public Information**;
>
> . . .
>
> provided the acts, errors or omissions that constitute such failure to comply with a **Privacy Policy** must take place on or after the Retroactive Date set forth in the schedule and before then [sic] end of the **Policy Period**, and the **Insured Organization** must, at the time of such acts, errors or omissions have in force a **Privacy Policy** that addresses those subsections above that are relevant to such **Claim**.

Policy at I.C.2.(c)(iii).

[7] The boldface is used in the policy by the parties to indicate defined terms. See Policy at VI.

> unfair trade practices, violation of consumer protection laws (except for consumer privacy protection laws under Insuring Clause I.C.) or false or deceptive or misleading advertising;

Policy at V.K.  Thus, Exclusion K bars coverage for claims arising out of violations of consumer protection laws.  The second parenthetical of Exclusion K contains a carve-out for "consumer privacy protection laws under Insuring Clause I.C."[8]   Here, the only asserted provision under I.C. which might operate as a carve-out to the exclusion, is I.C.2.(c)(iii) which provides for a claim for:

> **Damages** and **Claims Expenses** . . . for:
>
> . . .
>
> (c)    failure by the **Insured** to comply with that part of a **Privacy Policy** that specifically:
>
> . . .
>
> (iii)    provides a person with the ability to assent to or withhold assent for (e.g. opt-in or opt-out) the **Insured Organization's** collection or use his or her **Personally Identifiable Non-Public Information**;

Policy at I.C.2.(c)(iii).  Thus, in order for Convergys to be covered under I.C.2.(c), the *Martin* Action must be "because of any **Claim** . . . for . . . failure by the **Insured** to comply with that part of a **Privacy Policy** that specifically . . ." falls under one of the six enumerated categories, here the third category.

Therefore, if the *Martin* Action is a claim for the violation of a consumer protection law, it will be barred by Exclusion K.  However, if it is for the violation of a consumer privacy law under Insuring Clause I.C., for the failure to comply with a privacy policy that provides a person with the ability to opt-in or opt-out of the collection or use of his personally identifiable non-public information, then Exclusion K will not apply.

By its plain terms, Exclusion K bars coverage for the *Martin* Action.  The *Martin* Action, which sought recovery under the TCPA, was a claim "[f]or, arising out of or resulting from any actual or alleged . . . violation of consumer protection laws."  Policy at V.K.  The *Martin* complaint alleges that "[i]t is a violation of the TCPA, 47 U.S.C. § 227(b)

---

[8] In their briefs, the parties characterize the carve-out in Exclusion K differently.  However, whether the parenthetical within Exclusion K is construed as part of Exclusion K, or as an exception to Exclusion K, is irrelevant to the court's ultimate conclusion that the *Martin* Action is not covered. As will be discussed below, language of the parenthetical must be read in conjunction with Insuring Clause I.C.2.(c) and there can be no dispute that Convergys has failed to show that the *Martin* Action was for the conduct identified in Insuring Clause I.C.2.(c).

to call a person's cellular telephone using an automatic telephone dialing system." See Howell Aff. Convergys' Mot. Part. Summ. J. Ex. 1 at ¶ 12. Further, the action was brought "to secure redress for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") arising out of improper and unsolicited autodialed calls to plaintiff's cellular telephone." Id. at ¶ 1. The facts alleged in the complaint include that "[t]he TCPA prohibits the use of 'automatic telephone dialing systems' to call cellular telephones" and that "Convergys used an automatic telephone dialing system to call plaintiff and the class." Id. at ¶ 7, 9. Thus, Beazley has met its burden to show that Exclusion K applies as there can be no reasonable difference of opinion that the *Martin* Action was a claim for a violation of a consumer protection law. See Pioneer Tower Owners Assn., 12 N.Y.3d at 307.

Convergys argues that as a matter of law, the second parenthetical in Exclusion K establishes that the *Martin* Action does not fall under Exclusion K because the TCPA is a consumer privacy protection law under Insuring Clause I.C.[9] See Convergys' Mot. Part. Summ. J. 13. However, the carve-out in Exclusion K does not make Exclusion K inapplicable to all consumer privacy protection laws, it only makes Exclusion K inapplicable to claims for violations of "consumer privacy protection laws under Insuring Clause I.C." See Policy at V.K. The scope of the exception is thus defined by Insuring Clause I.C., which does not provide coverage for all violations of consumer privacy protection laws, but only those (as asserted in this case) which involve the failure to comply with a privacy policy that provides a person with the ability to opt-in or opt-out of the collection or use of his personally identifiable non-public information.[10]

_____

[9] The parties do not dispute whether the Telephone Consumer Protection Act is a consumer protection law, rather, Convergys argues that the Telephone Consumer Protection Act is specifically a consumer privacy protection law under Insuring Clause I.C. of the Policy. The TCPA can reasonably be viewed as both a consumer protection law and consumer privacy protection law under the Policy's language. As will be discussed elsewhere in this opinion, whether the TCPA is more appropriately considered a consumer protection law or a consumer privacy protection law, is not necessary for the court to decide this case because the presence of a consumer privacy protection law, while a necessary condition, is not a sufficient condition for the carve-out in Exclusion K to apply.

[10] To support its argument, Convergys cites DiIorio v. Nat'l Union Fire Ins. Co., 691 N.Y.S.2d 568, 569 (2nd Dep't 1999) where the Court held that a provision in a policy expressly made an exclusion for intentional acts inapplicable to injuries arising out of libel and slander, and thus, the defendant had a duty to defend plaintiff. In DiIorio, the exception to the exclusion operated to provide coverage. This citation is inapposite because Convergys mischaracterizes the "consumer privacy protection laws" carve-out to Exclusion K. Here, the exception simply does not apply. The carve-out does not exempt any claim implicating a consumer privacy protection law. The claim itself must be for a violation of a consumer privacy protection law under Insuring Clause I.C. Insuring

As Beazley correctly states, Convergys claim for coverage of the *Martin* Settlement "does not address or resolve violations of a Convergys' privacy policy." See Beazley's Mot. Summ. J. and Opp'n 12. There is nothing in the *Martin* complaint that would lead to the conclusion that the class sought to recover for failure to comply with a privacy policy. Nor did the class seek to recover under a privacy policy that provides a person with the ability to opt-in or opt-out of the collection or use of his personally identifiable non-public information. Furthermore, the settlement provides that "in consideration of the promises and covenants set forth in this Agreement, the Representative Plaintiff and each Class Member . . . will be deemed to have completely released and forever discharged Defendants . . . from any claim or claims they may have pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227(b), for the calls that are subject of the Action." Ziffer Decl. Convergys' Opp'n and Reply Ex. 6 at § 4.01. Both the *Martin* complaint and the settlement release make clear the *Martin* Action was "for" a violation of a consumer protection law, the TCPA, not for a failure of Convergys' to comply with a privacy policy.

Convergys cannot establish, nor create a genuine factual dispute that the *Martin* Action was for failure to comply with any part of a privacy policy, let alone one that provides a person with the ability to opt-in or opt-out of the collection or use of his personally identifiable non-public information. There is no reasonable interpretation of the Policy that would allow this missing link to be forgiven so that Convergys could survive summary judgment.

Nonetheless, Convergys goes to lengths to present evidence that one or more of its privacy policies were violated. See, e.g., Convergys' Opp'n and Reply 12-15, Sept. 9, 2013, ECF No. 34.[11] However, even assuming that one of Convergys "privacy policies" was violated by the same conduct Convergys was sued for in the *Martin* Action, there is no genuine dispute that either the complaint, or the settlement was "for" the "failure by the Insured to comply" with a privacy policy, let alone any of the specific enumerated parts of a privacy policy to which I.C.2(c) applies. The failure to present any evidence connecting

---

Clause I.C. identifies the specific conduct that needs to result in liability in order for the carve-out to apply.

[11] In its Motion for Partial Summary Judgment, Convergys proffers portions of documents including its "Business Process Outsourcing Services Agreement" (Howell Aff. Convergys' Mot. Part. Summ. J. Ex. 2) ("Master Agreement") and its "Outbound Sales Calls Policy" (Id. at Ex. 4, ECF No. 25-4), Convergys Agreement with D&B and an internal policy respectively. Convergys claims the *Martin* Action was for the failure by Convergys to comply with these documents, which it further claims are privacy policies within the meaning of the Policy. In its Opposition and Reply, Convergys again relies on its Master Agreement but ignores its "Outbound Sales Calls Policy," instead relying on its Code of Business Conduct (Howell Aff. Convergys' Opp'n and Reply Ex. 1, Sept. 9, 2013, ECF No. 37-2).

the suit to be "for" a violation of a privacy policy leaves no doubt that summary judgment is appropriate.

Because it cannot show that the *Martin* Action was "for" a failure to comply with a privacy policy that allowed a person to opt-in or opt-out of collection or use of personal information, Convergys tries to recast the carve-out in Exclusion K. To do so, it needs to give a strained interpretation to the simple word "for." It argues that the exception covers any claim alleging a violation of a privacy law as long as that claim is "'for' – *i.e.*, so long as it alleges actions or events that would constitute – a violation of an internal privacy policy." Convergys' Opp'n and Reply at 9. According to Convergys, this interpretation would extend coverage to claims "where the facts alleged would also constitute a violation of a Convergys privacy policy." Id. at 2. This interpretation asks too much of the word "for."[12] A reasonable businessperson would read this policy and assume that the word "for" had its ordinary, plain meaning in this context, *i.e.*, Convergys liability in the *Martin* Action would have to flow from Convergys' violation of a privacy policy that covers one of the six enumerated categories.

Convergys also argues its coverage stems from allegations rather than liability, because the policy promises to indemnify "for amounts that [Convergys] becomes legally obligated to pay 'because of any **Claim**.'" Convergys' Opp'n and Reply at 6. It tries to analogize its case to Morgan Stanley, arguing that under the Policy's language the mere existence of allegations could create coverage. See id., 225 F.3d at 277-278 (discussing the possibility that under the policy language allegations could provide coverage and that if that was the parties' intent it was binding). While there are many similarities to Morgan Stanley, both in the facts and in the language of the policies, Convergys argument fails. In Morgan Stanley, the issue was whether allegations could trigger coverage or whether coverage could only be triggered by liability. The policy indemnified for any:

> [l]oss which the Insured shall become legally obligated to pay, from any claim made against the Insured during the Policy Period, by reason of any actual or *alleged* negligent act, error or omission committed in the scope of the Insured's duties as investment counselors.

Id. at 277 (emphasis in original). Even assuming for the purposes of argument that the language in the Morgan Stanley policy and Convergys' policy are analogous, there are no allegations that Convergys violated a privacy policy. There are only allegations that

---

[12] Beazley's interpretation comports with the plain meaning of the word "for" and would limit coverage "to claims brought under state statutes providing a private right of action for violation of a company's privacy policy, or claims that otherwise specifically allege the violation of such an internal privacy policy." Convergys' Opp'n and Reply 2, Sept. 9, 2013, ECF No. 34.

Convergys violated the TCPA.[13]  Thus, even under its allegations theory, Convergys cannot survive summary judgment.

## CONCLUSION

For the reasons stated above, the plaintiff's motion for summary judgment is GRANTED and defendant's motion for partial summary judgment is DENIED.

Petitioners are directed to submit a proposed Judgment consistent with this Memorandum and Order to the Orders and Judgments Clerk of this Court by April 12, 2014.  The Clerk of the Court is directed to close these motions (Dkt. 20 and 28) and mark this case closed.

SO ORDERED.

Dated:  March 25, 2014
        New York, NY

                                        /s/ Claire R. Kelly
                                        Claire R. Kelly, Judge

---

[13] In a footnote to its Opposition and Reply, Convergys argues that even were the court to construe the policy "to unambiguously limit coverage to underlying claims specifically addressing violations of the policyholder's internal privacy policy . . . Beazley still would not be entitled to summary judgment holding that the *Martin* Action did not include such claims."  Convergys Opp'n and Reply at 12 n. 4.  In support of its allegations theory of coverage, Convergys states that the *Martin* Action plaintiffs' "first set of Requests for Admission [during discovery, was a] demand[] that Convergys admit that it did not have a policy of scrubbing phone numbers called with a predictive dialer in 2010, 2011 and 2012," a request that Convergys denied. Id.  To the extent the allegations theory would apply, this Request for Admission is not an allegation that would support Beazley's obligation to pay damages under the policy.